Case 1:24-mj-00116-MAU   Document

Case: 1:24-mj-00116
Assigned To : Moxila A. Upadhyaya
Assign. Date : 03/28/2024
Description: COMPLAINT W/ARREST WARRANT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>IFEDIORA OLI,<br><br>*Defendant.* | UNDER SEAL<br><br>MAGISTRATE NO. 24-<br><br>VIOLATION:<br><br>18 U.S.C. § 371 (Conspiracy) |

### AMENDED AFFIDAVIT IN SUPPORT OF
### A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Federal Bureau of Investigation ("FBI") Special Agent Deborah Frye, being duly sworn, hereby depose and state as follows:

1. This Affidavit is submitted in support of a Criminal Complaint charging IFEDIORA OLI with a violation of 18 U.S.C. § 371 (conspiracy). As described further below, there is probable cause to believe that OLI conspired with others to violate 18 U.S.C. §§ 1343 and 1346 by defrauding the District of Columbia of money, property, and the District's right to the honest services of one of its employees.

2. I am an FBI Special Agent and am currently assigned to the Public Corruption/Civil Rights Squad in Washington, D.C. I have thirteen years of law enforcement experience, all with the FBI. I have training in, and knowledge of, federal laws related to public corruption. I am empowered by law to investigate and make arrests for violations of federal law, including conspiracy, bribery, criminal conflicts of interest, fraud, and obstruction of justice, among others.

3. During my tenure as a law enforcement officer, I have participated in a variety of investigative activities, to include electronic surveillance, physical surveillance, debriefing of subjects and witnesses, and the search, seizure, and review of physical and electronic evidence. I

1

am also familiar with strategy, tactics, methods, tradecraft, and techniques of individuals engaged in white collar crime.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents, witnesses, and agencies. Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States. Unless specifically indicated, all conversations and statements described in this Affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements. All times provided in this Affidavit should be read as "on or about" times and are given in Eastern Standard Time unless otherwise noted.

## BACKGROUND

*Relevant Individuals and Entities*

5. OLI is a current resident of Maryland and United States citizen. He was born in Nigeria.

6. OLI works for the U.S. Department of Agriculture ("USDA") as an electrical engineer.

7. OLI is also the Principal for Highbury Global Group, Inc. ("Highbury").

8. Based on records obtained during this investigation, OLI uses the e-mail address "ioli@highburyglobal.com" to communicate on behalf of Highbury. That e-mail has an auto-signature which identifies the sender of the e-mail as "Ifedi Oli, President, Highbury Global Group."

9. Co-conspirator 1, who also resides in Maryland, has worked at the Washington Metropolitan Transit Authority ("WMATA") as an Information Technology (IT) Customer Support Manager from 2016 to the present. Co-conspirator 1 and OLI were long-term friends.

10. Beginning in and around 2018, Co-conspirator 1 used his position at WMATA to steer business opportunities to OLI and Highbury. For example, in January 2018, Co-conspirator 1 was assigned to help manage a WMATA contract through which a vendor would provide IT Helpdesk support services to WMATA. Co-conspirator 1 used his position at WMATA to get the principal vendor on the Helpdesk support services contract to funnel business to OLI and Highbury.

11. Co-conspirator 2 worked at WMATA from 2016 to January 2019 as a Contract Administrator, which is an entry level contracting position.

12. Co-conspirators 1 and 2 met and began a romantic relationship while they were both employed at WMATA. In early 2018, Co-conspirator 1 introduced Co-conspirator 2 to OLI.

13. The District of Columbia's Office of Contracting and Procurement ("OCP") is an office within the District of Columbia government. According to its website, OCP is responsible for working with District agencies and vendors "to purchase quality goods and services in a timely manner and at a reasonable cost while ensuring that all purchasing actions are conducted fairly and impartially."

14. From January 22, 2019, to October 10, 2023—and after having left WMATA—Co-conspirator 2 worked at OCP as a Contracting Specialist ("CS"). In this capacity, Co-conspirator 2 worked within OCP to help manage government contracting activities such as advertising, negotiation, price analysis, bid selection, and contract implementation.

15. On January 21, 2021, Highbury registered to do business in the District of Columbia. Co-conspirator 1 was listed as Highbury's Resident Agent on the registration.

*The Federal Investigation*

16. I have been helping lead an investigation into OLI and his co-conspirators' criminal conduct.

17. On March 1, 2024, the government informed an attorney for OLI that he was likely to face federal criminal charges.

18. On March 21, 2024, the government provided OLI's counsel with a letter reiterating that OLI is a target of a federal criminal investigation.

19. On March 26, 2024, federal agents learned that OLI plans to leave the United States with his partner and daughter. Their ultimate destination appears to be Nigeria. They are scheduled to depart Dulles International Airport in Virginia on the morning of Friday, March 29, 2024. They have tickets to return to the United States in April.

20. The tickets for this travel were purchased on March 7, 2024, which was six days after the government first spoke to Oli's attorney about Oli's potential criminal liability.

**PROBABLE CAUSE**

21. In January 2021, OCP began the process of helping the District of Columbia's Department of Forensic Sciences ("DFS") hire a vendor to provide DFS with COVID-19 testing supplies.

22. In her capacity as an OCP Contracting Specialist, Co-conspirator 2 was assigned to manage the COVID-19 testing supplies vendor contract solicitation, offer, and award on behalf of the District of Columbia.

23. On January 14, 2021, Co-conspirator 2 wrote to potential vendors and invited them to bid on the contract. Co-conspirator 2 included OLI, through his "ioli@highburyglobal.com" account, on the e-mail.

24. Later the same day, OLI forwarded Co-conspirator 2's e-mail about the contract to Co-conspirator 1 and wrote "FYI[.]"

25. On January 18 and 19, 2021, OLI (using his Highbury e-mail) and Co-conspirator 2 (using her official OCP email) communicated about the contract. OLI forwarded one of those e-mails to Co-conspirator 1 and wrote "See response from BriBri."

26. According to information developed in this investigation, "Bri Bri" is the nickname that Co-conspirator 1 and OLI have for Co-conspirator 2.

27. On January 19, 2021, OLI sent Co-conspirator 2 a bid from Highbury for the contract. OLI blind-copied Co-conspirator 1 on the e-mail.

28. The investigation has revealed that by January 19, 2021, OLI and his co-conspirators had repeatedly met to discuss how to obtain the COVID-19 testing supplies contract.

29. As noted above, on January 21, 2021, Highbury submitted its District of Columbia registration, listing Co-conspirator 1 as its Resident Agent. Co-conspirator 1 informed the government that the registration was submitted to help Highbury obtain the COVID-19 testing supplies contract. He also noted that he used a friend's address on the registration because OLI, Co-conspirator 1, and Co-conspirator 2 all lived outside of the District.

30. Also on January 21, 2021, OLI sent Co-conspirator 2 (at her OCP e-email address) several documents associated with Highbury's bid on the COVID-19 testing supplies contract. The e-mail's subject was "Compliance requirements." Highbury's "Bidder-Offeror Certification Form" was one of the documents attached to the e-mail. On the form, OLI listed himself as the

5

"President" of Highbury, and he listed his home address in Maryland as Highbury's principal place of business. The form had a section entitled "District Employees Not to Benefit," which stated that "*The bidder/offeror certifies that no officer or employee of the District of Columbia will benefit from this contract.*" In an ensuing section asking for the name of any District of Columbia officer or employee that "may benefit" from the contract, OLI wrote "N/A." OLI signed the form's certification and dated it January 21, 2021. Directly under OLI's certifying signature, the form notes that making false statements is a criminal violation of the "D.C. Official Code."

31. On January 25, 2021, OLI sent Co-conspirator 2 an updated Highbury quote for the contract.

32. On February 1, 2021, Co-conspirator 2 advised a senior OCP contracting official that Highbury's response was acceptable and asked whether OCP should proceed with awarding the contract to Highbury. The next day, Co-conspirator 2 again wrote the official about Highbury and asked, "Are we not moving forward with the award? The vendor has already confirmed immediate delivery upon receipt of the PO."

33. On February 3, 2021, the senior contracting official asked Co-conspirator 2 to prepare the contract. The same day, Co-conspirator 2 sent OLI the proposed contract to review, sign, and return. OLI, on behalf of Highbury, sent Co-conspirator 2 the signed contract later that day.[1]

34. The COVID-19 testing supplies contract with Highbury on behalf of DFS was fully executed on February 4, 2021. It was signed by OLI, on behalf of Highbury, and a District of Columbia contracting officer (who was not Co-conspirator 2). The total contract amount was $659,099.22. The term of the contract was from the date of execution until September 30, 2021.

---

[1] Co-conspirator 1 told law enforcement of his personal belief that Highbury would have been chosen as the vendor for the contract without Co-conspirator 2's assistance because Highbury was the lowest bidder.

The contract stated that the requested supplies were to be shipped to DFS at 401 E Street SW, Washington, D.C.  The contract incorporated, by reference, "The Standard Contract Provisions for use with District of Columbia Government Supplies and Services Contracts dated July 2020 ("SCP")."  The SCP has a provision entitled "District Employees Not to Benefit."  Among other things, that provision states: "*Unless a determination is made as provided herein, no officer or employee of the District will be admitted to any share or part of this contract or to any benefit that may arise therefrom, and any contract made by the CO or any District employee authorized to execute contracts in which they or an employee of the District will be personally interested shall be void, and no payments shall be made thereon by the District or any officer thereof, but this provision shall not be construed to extend to this contract if made with a corporation for its general benefit.*"

35.  The District of Columbia government ultimately paid Highbury over $630,000 on the COVID-19 testing supplies contract, which was the only contract that Highbury had with the District of Columbia government at the time.  In return, Highbury delivered the requested supplies.

36.  As part of those payments, on June 7, 2021, the District of Columbia issued a check to Highbury in the amount of $234,790.49.  On June 14, 2021, OLI sent a picture of the check to Co-conspirator 1 via WhatsApp message.[2]  The next day, OLI asked Co-conspirator 1 for his "bank details."  Highbury then wired $55,000 to Co-conspirator 1's personal bank account.  After giving Co-conspirator 1 confirmation of the wire, OLI wrote "I add 5k for bri bri."  Later in the WhatsApp conversation, OLI wrote "cash only for bri bri."[3]

---

[2] WhatsApp is a United States company that provides an internet-based multimedia messaging service, WhatsApp Messenger, via a cross-platform smartphone application that permits users to send and receive messages and calls.

[3] In the same WhatsApp conversation, Co-conspirator 1 confirmed that he gave the money to Co-conspirator 2 and wrote, "she says Thank You."  Co-conspirator 1 then added, "Hear her – y'all don't need to give me no money . . . I did it out of the kindness of my heart."  He then added three laughing-crying emojis.  OLI responded: "Lmao . . . We doing it out of the kindness of our heart too," and added the same laughing-crying emoji.

37. On October 4, 2021—shortly after Highbury's performance on the COVID-19 supplies contract had come to an end—Highbury wired $90,000 to Co-conspirator 1's personal account. On that same day, OLI sent Co-conspirator 1 a WhatsApp message confirming the wire transfer and adding: "give bri bri 10k."

38. Co-conspirator 1 told law enforcement that: (a) he received money from OLI (through Highbury) from the contract's profits; and (b) at OLI's direction, Co-conspirator 1 provided some of that money to Co-conspirator 2 in the amounts specified by OLI.

## CONCLUSION

39. OLI intentionally entered into an agreement with Co-conspirator 1 and Co-conspirator 2 to defraud the District of Columbia of money, property, and Co-conspirator 2's honest services by means of false and fraudulent pretenses, representations, and promises. OLI intentionally joined this agreement, and OLI and his co-conspirators took steps to carry out the conspiracy. There is therefore probable cause to believe that OLI violated the federal conspiracy statute, 18 U.S.C. § 371.

Respectfully submitted,

*Deborah E Frye*

Special Agent Deborah Frye
Federal Bureau of Investigation

Attested to by the applicant in accordance with
the requirements of Fed. R. Crim. P. 4.1 by
telephone on March 28, 2024.

_____
HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE